IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

BOUCHE MICKEY and          §
SHIRLEY BROWN,             §
                           §
     Plaintiffs,           §
                           §
v.                         §     CIVIL ACTION NO. H-05-3931
                           §
TEXAS COOPERATIVE EXTENSION, §
THE TEXAS A&M UNIVERSITY    §
SYSTEM,                    §
                           §
     Defendant.            §

MEMORANDUM AND ORDER

Pending is Defendant the Texas Cooperative Extension, The
Texas A&M University System's Motion for Summary Judgment (Document
No. 23).  After carefully reviewing the motion, responses, reply,
and the applicable law, the Court concludes that the motion should
be granted.

I.   Background

This is a race discrimination suit brought under Title VII of
the Civil Rights Act of 1964 ("Title VII") against Defendant Texas
Cooperative Extension ("TCE"), a member of the Texas A&M University
System.  Plaintiffs Bouche Mickey ("Mickey") and Shirley Brown
("Brown"), who state they are African-American, allege that they
were unjustifiably targeted by a workplace investigation at the
conclusion of which Brown was terminated and Mickey lost a
promotion and was offered a demotion, which prompted him to retire.

Plaintiffs also allege that they were subjected to a racially hostile environment.

Mickey began working for TCE in 1974 and had "risen through the ranks of the agency," ultimately being named the County Extension Director in Fort Bend County effective January, 2002.[1] As Director of the Fort Bend County Extension ("FBCE") Office, Mickey was in charge of the office and had supervisory authority over its 23 employees.  Document No. 23 ex. A at 3.  Mickey was responsible for "budgetary matters, supervision, employee coordination, capital improvements, [and] political support." Document No. 25 ex. A-1 ¶ 4.  Brown began working with the Extension Service in 1976, and she worked in the FBCE Office from 1981 until her termination in 2004.  She served as County Extension Agent specializing in Family and Consumer Services.  Brown's immediate supervisor was Mickey, whom she had known and worked with for many years.

In 2003, Texas Ranger Jeff Cook ("Cook") advised the TCE administration of a criminal investigation that potentially implicated Mickey and Brown.  Document No. 23 ex. A at 3-4.  The

---

[1] The Texas Cooperative Extension (formerly known as the Texas Agricultural Extension Service (TAES)), a member of the Texas A&M University System, is an educational organization that serves nearly every county in Texas, with approximately 250 offices and 1,400 personnel.  The uncontroverted summary judgment evidence is that there are 7 County Extension Director positions in Texas, currently held by "four whites, one Hispanic, one African-American, and one Asian/Pacific Islander."  Document No. 28 ex. A at 4.

newly-elected Fort Bend County Treasurer was alleged to have written more than $16,000 in unauthorized checks on the account of the Parent Leader's Association ("PLA"), an organization that had a working relationship with the FBCE Office.  Id.; Document No. 25 ex. A-2 ¶ 3.  Kyle Smith ("Smith"), TCE's Associate Director of County Programs, avers that Cook asked TCE to delay its internal investigation of the matter until he completed his review.

On May 7, 2004, while the outside criminal investigation was ongoing, TCE announced that Mickey had been promoted to County Extension Director in Harris County.  Soon thereafter, TCE administration learned that an employee in the FBCE Office had recently filed an EEOC charge of discrimination and criminal assault charges against Mickey.  Document No. 28 ex. A at 2.  Dr. Chester P. Fehlis ("Fehlis"), Associate Vice Chancellor for Agriculture of the Texas A&M University System ("TAMUS") and TCE Director, appointed an internal ad hoc committee (the "Committee") to interview FBCE employees and "make recommendations concerning any actions that [TCE] might find necessary."  Document No. 23 ex. A at 3. On May 10, 2004, the Committee began interviewing FBCE employees, including Mickey and Brown.  Three days later, Mickey was notified by letter that he would be placed on administrative leave with pay status "to allow time for investigation and administrative review of allegations that may be grounds for

dismissal," and the promotion to the Harris County position was temporarily placed on hold. Id. ex. A-1.

In June, 2004, Fehlis met with Chief Auditor Catherine Smock ("Smock"), who oversees the Texas A&M University System Internal Audit Department ("Audit Department"), to discuss allegations involving the possible misappropriation of federal tobacco grant funds by TCE employees. Document No. 23 ex. B at 1-2.[2] The Audit Department conducted an investigation and internal audit of the FBCE Office's handling of the grant funds, and found that Mickey and Brown had engaged in misconduct in the handling of the funds. In its Final Report dated July 19, 2004, the Audit Department found that Mickey had violated TAMUS Policies and Regulations when (1) he made an oral agreement between the FBCE Office and Horizons that led to receipt of $85,000 in federal grant funds; (2) he authorized over a two-year period without knowledge or approval of the TCE Fiscal Office or Administration the deposit of approximately $85,000 in federal grant funds to a private bank account over which

---

[2] The allegations involving the federal grant funds appear unrelated to the separate outside criminal investigation by Ranger Cook. Smock avers that the grant funds were "provided to the Texas Department of Health as the result of a federal settlement involving several major tobacco companies." Document No. 23 ex. B at 2. The Texas Department of Health awarded funding to Texas Southern University (TSU) to provide Tobacco Prevention Programs to the public, and TSU, in turn, contracted with 5 non-profit health organizations to oversee the educational programming. "One of these organizations, Horizons Intergenerational Wellness Coalition (Horizons) sub-contracted with the [FBCE Office] to provide educational programs to Fort Bend County residents." Id.

TCE had no signatory authority; and (3) he failed to comply with TAMUS regulations governing the disbursement of the grant funds, which disbursements were required to be made on vouchers certified as valid claims and approved for payment by authorized personnel. Id. at 2-3; id. ex. A-2 at 1-3.  The Audit Department found that Brown (the Extension Agent in charge of the Tobacco Education Program) had violated the Texas Penal Code and various TAMUS Policies by (1) submitting two falsified invoices totaling more than $7,000 for payment to a vendor for services Brown knew had not been performed, which sums the vendor, after depositing the checks, then paid to Brown personally; (2) directing a subordinate to falsify the services provided on a request to Horizons for reimbursement from a federal grant; and (3) directing a vendor to submit another invoice to falsify the services rendered for which payment was sought.  Id. ex. A-2 at 2-4.[3]  Smith avers in his affidavit that "the information set forth in the audit report was consistent with the information provided to our committee during the course of our interviews of the Fort Bend office personnel." Document No. 23 ex. A at 4.  By letters dated July 27, 2004, Brown was notified that her employment with TCE would be terminated effective August 10, 2004, id. ex. A-3, and Mickey was given the

---

[3]  It is uncontroverted that in June, 2005, a grand jury in Fort Bend County returned criminal indictments against Shirley Brown and Arnold Brown, the owner of Champion Services, for misappropriation of property from the Texas Department of Health in relation to Brown's handling of the grant funds.

option of accepting a transfer/demotion to Bexar County to serve as
County Extension Agent, or to proceed with retirement.  <u>Id.</u> ex.
A-4.  Mickey's promotion to the Harris County position was also
terminated.  Mickey chose to retire.

In their complaint, Plaintiffs allege that they were
unjustifiably targeted by the workplace investigation and "treated
differently from their non-black counterparts with regard to
discipline and terminations."  Plaintiffs also allege that they
were subjected to a work environment "replete with racial
animosity."  Plaintiffs seek damages, injunctive relief, interest,
attorney's fees, and costs.  TCE moves for summary judgment on all
of Plaintiffs' claims.


## II.  <u>Standard of Review</u>

Rule 56(c) provides that summary judgment "shall be rendered
forthwith if the pleadings, depositions, answers to interroga-
tories, and admissions on file, together with the affidavits, if
any, show that there is no genuine issue as to any material fact
and that the moving party is entitled to a judgment as a matter of
law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate
the absence of a genuine issue of material fact."  <u>Celotex Corp. v.
Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the
nonmovant to show that summary judgment should not be granted.

_Morris v. Covan World Wide Moving, Inc._, 144 F.3d 377, 380 (5th Cir. 1998).   A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.   _Id._   "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."   _Id._

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden."   _Anderson v. Liberty Lobby, Inc._, 106 S. Ct. 2505, 2513 (1986).  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.   _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 106 S. Ct. 1348, 1356 (1986).   "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.   _Kelley v. Price-Macemon, Inc._, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing _Matsushita_, 106 S. Ct. at 1351).   On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."   _Id._  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."   _Anderson_, 106 S. Ct. at 2513.

III.   <u>Discussion</u>

A.   <u>Title VII Standard of Review</u>

Title VII proscribes an employer from terminating or otherwise discriminating against any individual because of that individual's race.  42 U.S.C. § 2000e-2(a)(1).  The Title VII inquiry is "whether the defendant intentionally discriminated against the plaintiff."  <u>Roberson v. Alltel Info. Servs.</u>, 373 F.3d 647, 651 (5th Cir. 2004).  Intentional discrimination can be established through either direct or circumstantial evidence.  <u>Wallace v. Methodist Hosp. Sys.</u>, 271 F.3d 212, 219 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 1961 (2002).  Because Plaintiffs present no direct evidence of discrimination, their claims are analyzed using the framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 93 S. Ct. 1817 (1973).  <u>Id.</u>  Under this framework, a plaintiff must first create a presumption of intentional discrimination by establishing a prima facie case of discrimination.  <u>Id.</u>

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions.  <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2106 (2000).  The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'"  <u>Id.</u> (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2748 (1993)).  If the employer sustains its burden, the plaintiff's

8

prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative).  Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).  Here, Plaintiffs do not argue, and the pleadings do not support, a mixed motive theory of discrimination.  As such, Plaintiffs' claims will be considered under the more traditional pretext analysis.  See Johnson v. Saks Fifth Ave., TX, LP, 2007 WL 781946, at *21 (S.D. Tex. Mar. 9, 2007) (Rosenthal, J.); Ward v. Midwestern State Univ., 217 Fed. Appx. 325, 329 & n.20 (5th Cir. 2007).  At all times, the ultimate burden of persuasion that the employer intentionally discriminated remains with the plaintiff.  Reeves, 120 S. Ct. at 2106; Hicks, 113 S. Ct. at 2749.

B.   Plaintiff Mickey

     1.   Mickey's Prima Facie Case

     TCE concedes that Mickey has met the first three prongs of a prima facie case with respect to his wrongful demotion claim, namely, that: (1) he is a member of a protected class; (2) he was qualified for the position he held; and (3) he suffered an adverse employment action.  The summary judgment evidence also establishes

the fourth element of his prima facie case, namely, that he was replaced by a person outside his protected class. *See* Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001); Bryan v. McKinsey & Co., Inc., 375 F.3d 358, 360-61 (5th Cir. 2004).  Mickey has therefore established a prima facie case of race discrimination with respect to his wrongful demotion claim.

Mickey has not, however, established a prima facie case for his separate claim for discriminatory failure to promote him to the position of Harris County Extension Director.  To establish a prima facie case, among other things, Mickey must show either that the employer awarded the position to someone outside his protected class or that after the employer rejected the plaintiff, the employer continued to seek applicants with plaintiff's qualifications. *See* Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 680-81 (5th Cir. 2001); LaPierre v. Benson Nissan, Inc., 86 F.3d 444, 448 (5th Cir. 1996).  There is no proof of either.  The uncontroverted summary judgment evidence is that TCE awarded the position of Harris County Extension Director to Hurley Miller, an African-American, after Mickey's promotion was terminated. Document No. 28 ex. A at 4.  Mickey has failed to establish a prima facie case on his failure to promote claim.

2.   <u>TCE's Legitimate, Non-discriminatory Reasons and Mickey's
Evidence of Pretext</u>

TCE contends that even with a prima facie case of race
discrimination, Mickey cannot rebut TCE's preferred legitimate,
non-discriminatory reasons for its decision to offer him a demotion
or retirement--namely, that Mickey (1) failed to exercise proper
oversight and management of the FBCE Office; (2) failed adequately
to supervise his staff; and (3) violated various TAMUS policies in
relation to the investment, disbursement, and administration of the
federal grant funds.   TCE presents evidence that its employment
decision was based upon (1) the findings and recommendation of the
Committee that investigated the irregularities and interviewed
employees in the FBCE Office, including Mickey and Brown; and
(2) the Audit Department's findings in its detailed Final Report
dated July 19, 2004, that Mickey had violated TAMUS Policies with
regard to the handling of the federal grant funds.   The violations
found were that (1) Mickey over a two-year period had permitted
$85,000 of TCE's federal grant funds to be deposited into a private
bank account over which TCE had no signatory authority and
regarding which the TCE Fiscal Office and Administration had no
knowledge; (2) he made an oral contract with Horizons rather than
a written agreement as required; and (3) he failed to comply with
System regulations in making disbursements of grant funds.   *See*
Document No. 23 ex. A-2 at 2-3.   The Audit findings were consistent

11

with the Committee's findings.  Id. ex. A at 4.  Hence, TCE's executive management determined to give Mickey an option of reassignment to the Bexar County Agent position or retirement. Id. at 5.  TCE's reasons, if believed, are legitimate, non-discriminatory reasons for Mickey's reassignment.  See, e.g., Mendez v. Dollar Tree Stores, Inc., 114 Fed. Appx. 149, 150 (5th Cir. Nov. 22, 2004) (unpublished); Friend v. Interior Sys., Inc., 69 Fed. Appx. 659, 2003 WL 21356055, at *2 (5th Cir. May 30, 2003) (unpublished) (mismanagement is legitimate, non-discriminatory reason); Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993).

Mickey contends that the reassignment reasons proferred by the TCE Administration--the same Administration that shortly before had designated him for a promotion--were mere pretexts to discriminate against him based on his race.  "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"  Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003); see also Reeves, 120 S. Ct. at 2106.  "An employer's explanation is false or unworthy of credence if it is not the real reason for the employment action."  Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 412 (5th Cir. 2007).  Mickey attempts to show pretext largely by challenging one of TCE's proferred reasons: its contention that Mickey violated TAMUS Policies in the handling of

the federal grant funds.  Mickey does not dispute that he engaged in the conduct that led to his reassignment, but rather, he asserts that TAMUS Policies did not govern TCE and that TCE had no policies or guidelines for handling donations, grants, accounts, and contracts.  Document No. 25 at 14-15.  Mickey offers his own *ipse dixit* affidavit and affidavits from two former TCE employees who had worked for Mickey, plus another employee who saw him about four times a year, who all aver in identical language that TCE was "never governed by Texas A&M System Policy."  *See* Document No. 25 ex. A ¶¶ 19; ex. C ¶ 13; ex. D ¶ 9; ex. E ¶ 15.  The uncontroverted written TAMUS Policies, however, by their own terms expressly apply to the Texas A&M University System and its components, administrators, employees, and agents.  *See* Document No. 28 at 8-9; ex. A-8 at 1 ("The official actions of the . . . Texas A&M University System and its components, administrators, employees, and agents are governed by the" System Policies and Regulations); id. ¶ 3.1 ("The Board requires its members, administrators, employees, agents, and students to comply with all System Policies at all times.").[4]  That TCE is an agency or component of the Texas

---

[4] Section 88.001 of the Texas Education Code lists the five agencies and services which are components of the TAMU System, including the TCE (formerly known as "TAES").  TEX. EDUC. CODE § 88.001.  Section 85.21 provides that "the board [of regents] shall make bylaws, rules, and regulations it deems necessary and proper for the government of the university system and its institutions, agencies, and services."  Id. § 85.21(a).

A&M University System is uncontroverted in the summary judgment evidence and, indeed, from the day they filed this suit Plaintiffs have identified Defendant as "Texas Cooperative Extension, The Texas A&M University System."  Smith in his supplemental affidavit provides various examples of how "TCE's ties to TAMUS are present in every facet of TCE's existence," such as routine forms and form letters used in the Extension Office which make reference to System Policies (including a letter signed by Brown herself).  <u>Id.</u> ex. A at 3-4; ex. A-9.  Mickey provides no evidence that the System Policies exempt from their coverage any component of the System or, in particular, TCE.  The competent summary judgment evidence establishes as a matter of law that TAMUS Policies apply to *all* educational institutions and agencies that are components of the System, including TCE and its employees.

Even if TCE were mistaken in its determination that Mickey's conduct was in violation of TAMUS Policies, however, such error alone is insufficient to establish that TCE's preferred reason is pretext absent any evidence of discriminatory motive.  *See* <u>Dismuke v. City of Indianola</u>, 32 Fed. Appx. 126, 2002 WL 334618, at *3 (5th Cir. Feb. 11, 2002) ("[E]ven where an employer objectively errs in concluding that an employee violated a work rule or policy, absent evidence of discriminatory motive for the employer's discipline of the employee, such error alone is insufficient to establish that the employer's preferred justification is pretext."); <u>Little v.</u>

14

Republic Refining Co., 924 F.2d 93, 97 (5th Cir. 1991); Mayberry v.
Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995); Laxton,
333 F.3d at 579 ("[The inquiry] is not whether [the employer]'s
proferred reason was an *incorrect* reason for [the] discharge.").
The proper inquiry is "whether [TCE]'s *perception* of [Mickey]'s
performance, accurate or not, was the real reason for [his
demotion]." Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398,
408-09 (5th Cir. 1999); *see also* Thompson v. Sanderson Farms, Inc.,
2006 WL 2711497, at *6-7 (S.D. Miss. Sept. 21, 2006).

Here, Mickey presents no evidence that Fehlis, TCE executive
management, or any other decision maker involved in the
reassignment decision did *not* perceive Mickey's handling and
oversight of the federal grant funds to be deficient and in
violation of TAMUS Policies. The uncontroverted summary judgment
evidence is that TCE executive management made the decisions to
withdraw Mickey's promotion and to offer him a reassignment or
retirement only after receiving information from the Committee and
the detailed report from the Audit Department of Mickey's
violations of TAMUS Policies with respect to the oversight and
handling of $85,000 in federal grant funds. Mickey has presented
no evidence that TCE's determination that he violated TAMUS
Policies in his handling of $85,000 of federal grant funds was

pretextual or not made in good faith. *See, e.g.,* <u>Mayberry v. Mundy</u>
<u>Contract Maint. Inc.</u>, 197 Fed. Appx. 314, 316 (5th Cir. 2006).[5]

Mickey also attempts to show pretext by arguing that unnamed
other Directors were treated more favorably. Document No. 25 at
19. To prove disparate treatment, Mickey must show that the
misconduct for which he was disciplined was "nearly identical to
that engaged in by an employee not within [his] protected class
whom [the employer] retained." <u>Wallace</u>, 271 F.3d at 221 (internal
alterations and quotation omitted). Mickey presents no summary
judgment evidence that other similarly-situated, non-black
Directors engaged in similar misconduct but were treated more
favorably. Mickey neither argues nor presents evidence that other
TCE directors were found through internal audits to have dealt with
federal grants or other funds in disregard of TAMUS policies, but
were treated more favorably upon the discovery of their supervisory
failures. Although Mickey asserts in his unverified brief that
other "similarly-situated non African-American directors" were not
demoted after engaging in similar practices, these "general,
conclusory, and unsubstantiated statements do not constitute
competent summary judgment evidence." <u>Ramirez v. Gonzales</u>, 2007 WL
329207, at *4 (5th Cir. Jan. 30, 2007) (unpublished); <u>Ramsey v.</u>

---

[5] TCE also concluded that Mickey's conduct with respect to the
grant funds constituted mismanagement and a failure to exercise
proper oversight and supervision of his staff. Mickey offers no
evidence that these reasons are false or a pretext for intentional
discrimination.

Henderson, 286 F.3d 264, 269 (5th Cir. 2002) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment.") (quotation omitted).  Mickey has presented no evidence to raise a fact issue that he was similarly situated to but received less favorable treatment than other non-black TCE employees under nearly identical circumstances.

In sum, after viewing the evidence in the light most favorable to Mickey, Mickey has failed to raise a genuine issue of material fact that TCE's legitimate, non-discriminatory reasons for offering him a demotion or retirement were mere pretexts for intentional race discrimination.   TCE is entitled to summary judgment on Mickey's disparate treatment race discrimination claim.

C.   Plaintiff Brown

1.   Brown's Prima Facie Case

Brown contends that she was terminated as an act of race discrimination.   TCE acknowledges that Brown has satisfied the first three elements of her prima facie case but claims she has failed to establish the fourth element.   Indeed, the summary judgment record reveals no allegations or summary judgment evidence regarding who replaced Brown as County Extension Agent after her termination.  Further, TCE argues that there is no summary judgment evidence that someone outside of Brown's protected class was

treated more favorably than Brown *in nearly identical circumstances*. *See* Wallace, 271 F.3d at 221; Aquinaga v. Tex. Alcohol & Beverage Comm'n, 98 Fed. Appx. 328, 331 (5th Cir. 2004).

Brown argues that other TCE employees were paid from funds in the volunteer organization account, and it was "common practice" for TCE agents and specialists to be reimbursed for expenses and services in conducting educational programs. Brown names several TCE employees who allegedly received direct payments for rendering services to various groups working with TCE, but who were not discharged: (1) Glenn Averitt (white), who was paid by the Horse Committee for "training and speaking"; (2) Ron Castillo (white/Hispanic), who contracted with TSU/Horizons to provide food for an event; and (3) "[n]umerous other white TCE agents and specialists [who] have been compensated through EPC accounts for services rendered in speaking at events of various groups working with TCE. . . ." Document No. 26 ex. 1 ¶ 25; ex. 2 ¶ 15. None of these circumstances raises a genuine issue of material fact as to whether Brown was treated less favorably than those outside the protected class. While the record reflects that other TCE employees may have been paid for personally providing services to various groups working with TCE, there is no summary judgment evidence that any employee except Brown submitted false invoices and approved falsified invoices for payment to an outside vendor, who in turn cashed the checks and gave back the money to the

authorizing employee.[6]  Brown does not allege that any other TCE employee committed fraudulent or potentially illegal acts with respect to being paid for providing such services, but was not terminated.  There is no evidence that Brown's comparators were similarly situated to Brown but not terminated under *nearly identical* circumstances.  *See* <u>Wyvill v. United Cos. Life Ins. Co.</u>, 212 F.3d 296, 304-05 (5th Cir. 2000); <u>Shackelford</u>, 190 F.3d at 405-06.

Brown also claims that she was treated less favorably than Ron Wooley ("Wooley") (white), a TCE employee who allegedly assaulted his secretary in the TCE office and was not terminated, but instead was later promoted to Regional Extension Director or District Extension Director.  *See* Document No. 26 at 11; ex. 2 ¶ 16.  The summary judgment record reveals no facts regarding the incident characterized by Plaintiffs as an "assault," the position that Wooley held at the time, the identity of his supervisor, whether Wooley's supervisor or the TCE administration knew of the incident, or the actions, if any, taken by TCE to address the matter.  There is, in short, no evidence by which to compare Wooley's conduct in

---

[6] Plaintiffs' attorney, Katrina Patrick ("Patrick"), submits an affidavit in which she avers that she has become aware that other TCE employees performed outside services for groups working with TCE, and were compensated for such work.  Document No. 26 ex. 9 ¶ 2.  She avers that "[m]any said it was a common practice . . . and were surprised that Ms. Brown was being terminated . . . ."  <u>Id.</u>  TCE has correctly objected to this statement as inadmissible hearsay, and it is not considered.  *See* FED. R. EVID. 801(c); <u>Fowler v. Smith</u>, 68 F.3d 124, 126 (5th Cir. 1995).

that vaguely described incident with the proven misconduct of Brown in misappropriating over $7,000 in federal grant funds and submitting falsified invoices to one's employer. *See, e.g,* Okoye, 245 F.3d at 514; Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990); Black v. Sysco Foods of Houston, No. 06-2236, 2007 WL 1481081, at *5 (S.D. Tex. May 21, 2007) ("In essence, to raise a presumption of discrimination in this case, plaintiff must demonstrate that non-African American workers, who engaged in the *same misconduct under similar circumstances*, were not terminated.") (emphasis added). In sum, Brown has failed to present any evidence that she suffered disparate treatment under nearly identical circumstances with regard to her termination.

Nonetheless, Brown argues, "the circumstances give rise to an inference of discrimination." Document No. 26 at 8. Brown does not identify the "circumstances" to which she refers, but in her affidavit she avers that "[f]rom the beginning, it seemed that [Texas Ranger Cook] had an agenda on a witch hunt directed at me and Mr. Mickey" and she speculates that the outside criminal investigation was "directed by false and misleading information provided by Melody Krejci, Margaret Kunz, and Jacque Gerke, three white employees who had previously used racial epithets and made statements about not wanting to work for black supervisors." *See* id. ex. 1 ¶ 26. Brown provides only conclusory statements and subjective beliefs, but no competent summary judgment evidence to

suggest that the investigations were racially biased or mere pretexts. *See* Young v. Equifax Credit Info. Servs., Inc., 294 F.3d 631, 639 (5th Cir. 2002) ("Conclusory affidavits are not sufficient to defeat a motion for summary judgment."); Friend, 2003 WL 21356055, at *2 n.5 ("Plaintiffs' conclusional assertions of discrimination in the conduct of the investigation are not sufficient, in the absence of supporting evidence, to defeat summary judgment."). Moreover, Plaintiff's conclusory statements about a biased outside criminal investigation permit no reasonable inference that *Fehlis or TCE* harbored a bias against African Americans or acted with racial animus, or that TCE's decision to terminate Brown was at all influenced by Brown's race. Brown also argues that only one of seven African Americans who held "key positions" in Fort Bend County now remains. Document No. 26 at 5. Again, there is no evidence as to the identities of these employees, the circumstances or dates of their departures (*e.g.*, whether or when they resigned, retired, were terminated, transferred, or promoted), or any other evidence from which a bias against African Americans could reasonably be inferred. There is no evidence, considered separately or cumulatively, that gives rise to an inference that Brown's termination was an act of intentional race discrimination. In sum, because Brown has presented no summary judgment evidence that she was replaced by someone outside of her protected class, and because she cannot raise so much as a

fact issue that similarly-situated non-black employees were not terminated under nearly identical circumstances, or that her termination was otherwise discriminatory on account of her race, Plaintiff has failed to establish a prima facie case.

> 2. <u>TCE's Legitimate, Non-discriminatory Reasons and Brown's Evidence of Pretext</u>

Even if Brown could establish a prima facie case of race discrimination, she has presented no proof to rebut TCE's proferred legitimate, non-discriminatory reasons for its decision to terminate her. TCE explained its reasons for her termination in a two-page letter dated July 27, 2004: "[I]n recent weeks [TCE] has reviewed certain aspects of its operation in the Extension Office in Fort Bend County with primary emphasis on the manner in which local and external funds are received and accounted for." It advised that "[a] number of serious items of concern . . . surfaced during the review," including: (1) Brown's creation of falsified invoices for over $7,000 in printing services that she knew Champion Services had not performed, her authorization of payment for these invoices, and that Champion Services "deposited the payments and returned all or most of the money to [Brown]"; (2) Brown's intentional falsification of a $215 invoice for a catered lunch after she discovered that the grant did not allow for the purchase of food, and (3) Brown's instructions to a vendor to change a $2,200 invoice for "meals" to "youth services"--actions

that constituted falsification of government documents, violations of System and agency guidelines, and acts of dishonesty.  Document No. 23 ex. A-3.  The letter stated that these incidents (which were the "most serious, but are not the only violations") "constitute [Brown's] repeated failure to abide by rules and regulations, a lack of personal and professional credibility that undermines your ability to function effectively in your job, a lack of trustworthiness, and/or acts of dishonesty.  Each incident individually is grounds for dismissal." Id.  These reasons, if believed, constitute legitimate, non-discriminatory reasons for Brown's discharge.  *See, e.g.,* Moore v. Eli Lilly & Co., 802 F. Supp. 1468, 1472 (N.D. Tex. 1992).

Brown asserts pretext by challenging TCE's characterization of her job performance and providing some excuses for her described misconduct.  However, Brown "cannot survive summary judgment simply by denying or explaining her alleged deficiencies." Ramirez, 2007 WL 329207, at *3.  The proper inquiry is "whether [TCE]'s *perception* of [Brown's] performance, accurate or not, was the real reason for her termination." Shackelford, 190 F.3d at 408-09; *see also* Laxton, 333 F.3d at 579; Mayberry, 55 F.3d at 1091.  Brown provides no evidence that Fehlis and TCE did not perceive her job performance deficient in every way described.  In fact, in response to the termination letter, Brown herself, through her attorney, admitted that "all of the concerns detailed in the termination

letter . . . were fault worthy and [Brown] is regretful." Document No. 23 ex. C at 2. Brown admitted that she performed the printing services initially contracted to Champion Services and that she received the money, and "[s]he realizes that her conduct lacked good judgment." Id.

Brown also attempts to show pretext by arguing that she was "unfairly singled out and terminated" for being reimbursed for performing printing services, as it was a "common practice" for TCE agents to be reimbursed for expenses and services incurred in conducting educational programs. However, as discussed above, the summary judgment record does not support Brown's contention that she was treated differently under nearly identical circumstances because there is no summary judgment evidence that any named employee besides Brown submitted falsified invoices and approved falsified invoices for payment to an outside vendor, who in turn cashed the check and turned the money over to the complicit employee. Nor is there summary judgment evidence that any TCE employee besides Brown committed fraudulent or possibly illegal acts to obtain such payments without being terminated. *See* Wallace, 271 F.3d at 221; Wyvill, 212 F.3d at 305. In sum, Brown has failed to raise an issue of material fact that her employment was terminated by TCE based on race discrimination, and TCE is entitled to summary judgment on her disparate treatment race discrimination claim.

D.   Hostile Work Environment Claim

Plaintiffs' other discrimination claim, based on a racially hostile work environment, requires Plaintiffs to prove that: (1) they were members of a protected class; (2) they were subjected to unwelcome harassment; (3) the harassment was based on their race; (4) the harassment affected a term, condition, or privilege of employment; and (5) TCE knew or should have known of the harassment, yet failed to take prompt remedial action.   *See* Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 353 (5th Cir. 2001); *see also* Felton v. Polles, 315 F.3d 470, 484 (5th Cir. 2002).   To be actionable, the challenged conduct must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment. Harris v. Forklift Sys., Inc., 114 S. Ct. 367, 370-71 (1993). Whether the harassment is sufficiently severe or pervasive is based on a totality-of-the-circumstances test that focuses on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." Turner v. Baylor Richardson Med. Ctr., 476 F.3d 337, 347 (5th Cir. 2007) (quoting Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000)); *see also* Harris, 114 S. Ct. at 371.   "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."   Faragher v.

City of Boca Raton, 118 S. Ct. 2275, 2283 (1998) (internal citation omitted).   The environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."   Id. (applying the standard to sexual harassment case, but noting that the standards for racial and sexual harassment overlap); see also Harris, 114 S. Ct. at 370.

Plaintiffs do not defend the hostile work environment claim in their briefs.   Mickey in his affidavit, however, claims that it "came to [his] attention" that three lower-level white employees had made inappropriate remarks, and he attempted to correct the situation as their manager.   See Document No. 26 ex. 2 ¶ 14. Mickey presents no evidence, however, that he himself was subjected to unwelcome harassment based on race, or that any alleged harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of his employment.   Although Brown in her affidavit contends that she "personally witnessed" "a small number of white female employees" balk at taking orders from some unnamed "black superiors," she does not identify who, when, where, or any other facts regarding this incident or how it was resolved. Moreover, she presents no summary judgment evidence that she herself was subjected to racial harassment or a hostile work environment, or that any harassment altered a term or condition or her employment, or that she complained to any member of management

about the alleged conduct.  Because Plaintiffs have failed to raise a genuine issue of material fact that they were subjected to a racially hostile work environment, TCE is entitled to summary judgment on this claim.

## IV.  <u>Order</u>

Based on the foregoing, it is

ORDERED that Defendant the Texas Cooperative Extension's Motion for Summary Judgment (Document No. 23) is GRANTED, and Plaintiffs Bouche Mickey's and Shirley Brown's claims against Defendant are DISMISSED on the merits.

The Clerk will enter this Order and provide a correct copy to all counsel of record.

SIGNED at Houston, Texas, on this 1st day of August, 2007.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE